**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 16-cv-01116-CMA-STV

PHILLIP HARRIS, individually and for other similarly situated,

      Plaintiff,

v.

LIBERTY OILFIELD SERVICES, LLC,

      Defendant.

─────────────────────────────────────────────────────────────

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

─────────────────────────────────────────────────────────────

The matter is before the Court on the Parties' competing motions for summary judgment (Doc. ## 32, 33), wherein they dispute whether Plaintiff Phillip Harris was exempt from the protections of the Fair Labor Standard Act (FLSA) when he worked as a field engineer for Defendant Liberty Oilfield Services.  Because the record clearly supports that Plaintiff was exempt, such that no reasonable juror could find otherwise, the Court grants Defendant's motion, denies Plaintiff's motion, and dismisses this case.

## I.    <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing motions for

summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## II.  **BACKGROUND**

Defendant is a fracking company that provides customized frac design and execution for clients at oil drilling sites to improve efficiencies, reduce costs, and minimize health, safety, and environmental impact.  (Doc. # 39 at 1.)  To support this effort, Defendant employs field engineers at each drilling site.  (Doc. # 32 at 2.)  Plaintiff worked as a salaried field engineer for Defendant from November 2014 to February 2016.  (*Id.* at 6.)  His starting salary was $72,000, and he worked in the field for two weeks on and two weeks off each month.  (Doc. # 32-2 at 6.)

As a field engineer, Plaintiff monitored raw materials used during the frac process by collecting real time data using software called Fracpro.  (Doc. # 39 at 2.)  Among other things, he was required to track changes to well pressure, pumping rate, sand concentration, and fluid type.  (*Id.*)  On a moment-by-moment basis, he would "grab" pertinent data and values from Fracpro and create an Excel report for the client's representative at the drilling site.  (Doc. # 32-2 at 18.)  Based on that report, the client's representative would direct changes to the frac process.  (*Id.*)  According to Defendant, field engineers, like Plaintiff, made "real-time decisions" that affected "everything that is going on" at the drilling site; it was "critical" that he understood the engineering design and physics behind the frac process.  (Doc. ## 32-1 at 3; 32-3 at 1.)

Plaintiff was terminated from his position for "job abandonment" in February 2016.  (Doc. ## 32 at 8; 33 at 8.)  He was thereafter employed as a project manager by Rick Engineering, a land development and construction company, and salaried at $125,000 annually.  (Doc. # 39 at 6.)

In May 2016, Plaintiff initiated this lawsuit as a collective action against Defendant alleging primarily that Defendant failed to pay him, and other field engineers, for overtime as required under the FLSA.  (Doc. # 1.)  In January 2017, this Court conditionally certified the lawsuit as a collective action pursuant to § 216(b) of the FLSA. (Doc. # 24.)  Notice was mailed to eighty-two potential collective action members and no other persons opted into this suit.  (Doc. # 32 at 2.)

The Parties have since filed the instant motions for summary judgment.  (Doc. ## 32, 33.)  They raise one crucial issue for the Court's consideration—whether Plaintiff's employment as a field engineer falls within one of the exemptions under the FLSA and thereby disqualifies him from the FLSA's overtime protections.

### III.    EXEMPTIONS UNDER THE FLSA

The FLSA requires employers to pay covered employees one and one-half times the regular hourly rate for each hour worked above forty per workweek.  29 U.S.C. § 207(a)(1).  Certain employees, however, are exempt from this protection.  *Id.*

To be exempt, an employee's "primary duty" must be the performance of exempt work.  29 C.F.R. § 541.700.  The term "primary duty" means the "principal, main, major or most important" duty that the employee performs.  *Id*.  "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id.*  The FLSA

specifically exempts any employee who performs his primary duties in a bona fide (1) professional or (2) administrative capacity.  29 U.S.C. § 213(a)(1).

## A.  PROFESSIONAL EXEMPTION

To qualify as a bona fide exempt professional employee, the employee must earn at least $455 per week and his primary duty must be in performance of work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300(a)(2).  "Work requiring advanced knowledge" means

> work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances.

29 C.F.R. § 541.301(b).  The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" restricts the exemption to "professions where specialized academic training is a standard prerequisite for entrance into the profession."  29 C.F.R. § 541.301(d).  Although the best evidence is "possession of the appropriate academic degree," the exemption is also available to employees "who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction."  *Id.*

The Court finds that Plaintiff's work as a field engineer falls under the professional employee exemption.  First, Plaintiff made well over $455 per week.  Indeed, he earned a bi-weekly salary of $2769.23.  (Doc. # 33 at 2.)  That Defendant

may have applied several deductions to Plaintiff's pay when he repeatedly failed to report to work does render the salary requirement unsatisfied. (Doc. # 32 at 9–10; 33 at 2, 5.)

Second, the record supports that Plaintiff's position required skills "customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(d). Plaintiff holds a Bachelor of Science in Construction Management. (Doc. # 33 at 6.) Before becoming a field engineer for Defendant, Plaintiff worked as a salaried "project manager," "development manager," or "project engineer" for various engineering and construction companies over the course of thirty years. (Doc. # 32-2 at 2–3, 12.) Plaintiff's field engineer training with Defendant included a week of "classroom" training, during which time he was taught to perform calculations, including water density, hydraulic pressure, and "downhole" calculations. (Doc. # 39 at 11.) He also spent several days shadowing a lab technician and learning, among other things, the process of measuring viscosity under different pressure scenarios. (Doc. # 32-2 at 7.) Plaintiff's training also extended into the field. Indeed, he considered himself "in-training" during his fourteen-month tenure with Defendant. (*Id.*)

Third, the record supports that Plaintiff performed work "requiring advanced knowledge." Plaintiff contends that he did nothing more than collect data. (Doc. # 33 at 9.) He equates his job to that of a "clerical/recording" or "mechanical" worker who performs rote, repetitive tasks, adding that Defendant "could even take the [field] engineer out of [the operation]" and it would run just the same. (Doc. # 39 at 19–20; Doc. # 32-2 at 11.) Plaintiff's description is a clear oversimplification of his job duties—

an oversimplification that is belied by the record.  For starters, one of Defendant's

engineering managers described a field engineer's primary duties as follows:

> To provide operations and the customer with sound
> engineering judgment; to run and help track fluid system,
> mass balances, adherence to the design, stage reporting,
> post-job reporting; helping advise the . . . [client][1] on impacts
> of design changes or necessity for design change; to
> observe the job as it's going downhole to monitor the
> chemical rates, both through telemetry and through what we
> call strap calculations; to ensure the QA/QC guy . . . is
> trained up on how to do his job because the [field] engineer
> is typically the one training [them] to do their job.

(Doc. # 31-1 at 5.)  When asked to narrow this down, he clarified:

> [T]o boil it all down . . . [a Field Engineer's primary duty] is to
> ensure a job is pumped as to design and make changes
> from an engineering perspective if things need to be
> changed.  Everything else is sort of how you do that.

(*Id.*)  Notably, Defendant paid Plaintiff a significant salary based on his skill, expertise,

and critical role in the drilling operation.  Although Plaintiff worked in the field only two

weeks each month, he was paid for a full month.

Moreover, Plaintiff's own testimony does not support that his position was purely

clerical.  Plaintiff testified that field engineers "set up Fracpro," interfaced with the

software according to client design preferences, and conducted real-time data retrieval

and entry "at every different step of the frac" in order to account for moment-to-moment

changes in raw materials.  (Doc. # 32-2 at 16–18.)  He also stated that a field engineer

was needed to create a report for the client based on data portrayed on Fracpro graphs

detailing, among other things, trends in well pressure, pumping rate, sand

concentration, and fluid type.  (*Id.*)  Occasionally, a field engineer would have to alter

---

[1] The Parties also call the client representative at the drilling site "the company man."  (Doc. #
32-1 at 5.)

the report with a "notation," explaining to the client about any unexpected modifications to the frac process.  (*Id.* at 19.)  Plaintiff added there is only "one engineer at [each] frac location," and that "nobody else knows the computer program Fracpro other than the field engineer."  (*Id.* at 11.)  Indeed, Defendant trusted Plaintiff to work in "the data van as a solo engineer"; only occasionally sent a supervisor to monitor his work; and approved for implementation Plaintiff's "operational effectiveness" ideas.  (*Id.* at 8, 19.)

Based on this evidence viewed in the light most favorable to Plaintiff and the applicable law, it is apparent to this Court that Plaintiff's work responsibilities went well beyond rote data entry.  Plaintiff was expected and required to use his engineering knowledge and expertise to track, analyze, and interpret data relating to the drill site, including well pressure, pumping rate, sand concentration, fluid type, etc. and prepare reports for the client, which the client then relied upon in making its decisions with respect to the ongoing drilling.  No reasonable juror could conclude otherwise or find that Plaintiff's primary duties did not constitute professional work under the FLSA.

## B.  ADMINISTRATIVE EXEMPTION

In the alternative, the Court also finds that Plaintiff qualified as a bona fide exempt administrative employee.

To qualify as a bona fide exempt administrative employee, the employee must (1) earn at least $455 per week; (2) exercise discretion and independent judgment with respect to matters of significance; and (3) primarily perform work directly related to the management or general business operations of the employer or the employer's customers.  29 U.S.C. § 541.200 (a).

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. 29 C.F.R. § 541.202(a) The term "matters of significance" refers to the level of importance or consequence of the work performed. *Id.* The phrase "directly related to the management or general business operations" refers to "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201 (a).

First, as the Court has already concluded, the salary requirement is met. Second, as analyzed above, Plaintiff's job required him to exercise discretion; he used independent judgment to monitor the fluid system and prepare a report based on a host of rapidly changing variables and conditions.  The report could quickly lead to immediate change at the drilling site and a field engineer's mistakes could have large, costly consequences.  *See* 29 C.F.R. § 541.202(b) (when determining whether an employee exercises discretion and independent judgment, courts consider, among other factors, whether the employee provides "advice" or "has the authority to commit the employer in matters with a significant financial impact."); 29 C.F.R. § 541.202(c) ("The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.").  The Court also has no trouble concluding that Plaintiff's discretion and judgment affected matters of "significance."  An engineering manager testified to the critical role of a field engineer, like Plaintiff.  He explained the time sensitive calculations

a field engineer "needs to be constantly running in his head" to ensure that, when fluid properties change and the friction profile changes, the pressure does not dramatically increase or cause an operation "shut down."  (Doc. # 32-1 at 4.)

Third, Plaintiff's work related to the general business operations of the Defendant and, more importantly, Defendant's clients.  Plaintiff, the only field engineer at each drilling site, created real-time data reports that passed swiftly to the client representative at the site, often without a second level review, and had a direct effect on the design and implementation of the frac operation.  *See*  29 C.F.R. § 541.201(c) ("An employee may also qualify if he acts as an advisor or consultant to his employer's clients.").  Contrary to Plaintiff's contentions, he was not a production employee.  *See Kennedy v. Commonwealth Edison Co*, 410 F.3d 365 (7th Cir. 2005) (distinguishing workers on the production line from those that "spot trouble in advance and decide what steps to take.").  Plaintiff's work was far reaching and strategic; he also testified to creating numerous "operational effectiveness" ideas for streamlining Defendant's drilling process—one of which Defendant approved for implementation.  (Doc. # 32-2 at 8, 19.)

Based on this evidence viewed in Plaintiff's favor and the applicable legal authority, the Court finds that, even if Plaintiff is not an exempt professional employee, the work he primarily performed would be the exempt work of an administrative employee and, therefore he does not qualify for overtime under the FLSA.  Because no reasonable juror could find otherwise, summary judgment in Defendant's favor is warranted.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary

Judgment (Doc. # 33) and GRANTS Defendant's Motion for Summary Judgment

(Doc. # 32).

DATED:  January 17, 2018                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge